# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRANDON KELLUM,
M03614,

        **Plaintiff,**

                                           **Case No. 18-cv-715-MJR**

vs.

CASEY A. GOODWIN,
TYSON P. SHURTZ,
JACQUELINE LASHBROOK,
CHARLES HECK,
LIEUTENANT PEARCE,
C/O CHAPMAN,
C/O FURLOW, and
SHERRY BENTON,

        **Defendants.**


## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

    Plaintiff Brandon Kellum, currently incarcerated in Lawrence Correctional Center, brings this *pro se* action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional that allegedly occurred when Plaintiff was housed at Pinckneyville Correctional Center ("Pinckneyville") between 2016 and 2017.

    In connection with his claims, Plaintiff names Case A. Goodwin (Correctional Officer), Tyson P. Shurtz (Correctional Officer), Jacqueline Lashbrook (Warden), Marcus A. Meyers (Correctional Officer), Charles V. Heck (Lieutenant/Correctional Officer), Lieutenant Pearce (Lieutenant/Correctional Officer), C/O Chapman (Sergeant/Correctional Officer), C/O Furlow (Lieutenant/Internal Affairs/Correctional Officer), and Sherry Benton (Administrative Review Board Member). Plaintiff seeks monetary damages.

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

**First Disciplinary Proceeding**

On May 7, 2016, Plaintiff wrote a letter to C/O Goodwin.  (Doc. 1, pp. 10, 25-26). According to Plaintiff, the letter did not contain any "inappropriate" material; he was "simply trying to establish a confidential connection with someone [he] thought was very influential." (Doc. 1, pp. 10, 26).  Because of the letter, Plaintiff was charged with violating DR 208

(Dangerous Communications); DR 304 (Insolence); DR 307 (Unauthorized Movement); and DR 404 (Violation of Rules). (Doc. 1, pp. 10, 25) (ODR No. 201601209/1). The disciplinary charge was written by C/O Goodwin on May 7, 2016 and was served on Plaintiff on May 8, 2016. (Doc. 1, pp. 25-26, 32-33).

A disciplinary hearing was held on May 10, 2016. (Doc. 1, pp. 10, 32-33). At the hearing, the disciplinary report was read to the Plaintiff, Plaintiff pled not guilty, and Plaintiff submitted a written statement, stating "Secondly, the kite in question was simply me trying to establish a confidential connection with someone whom I thought was very influential. I was only seeking a discreet avenue to depart vital information." (Doc. 1, p. 33). The Adjustment Committee, which was comprised of Lieutenant Heck and C/O Meyers, found Plaintiff guilty on all charges. (Doc. 1, pp. 10, 32). The finding of guilt was based on the following:

> DR written by reporting employee who was approached by inmate Kellum M03614 and placed in a letter in the pod security box. The letter contained inappropriate content where Kellum wishes to have a confidential relationship with R/E. Inmate's admission of guilt in letter where he states he was trying to establish a confidential connection with someone he thought was very influential. ID'd by ID card.

(Doc. 1, p. 33).

The Adjustment Committee sanctioned Plaintiff with placement in segregation for 4 months, demotion to "C" grade for 4 months, commissary restriction for 4 months, and revocation of 2 months of good conduct credit ("GCC"). *Id.* The Adjustment Committee's findings and sanctions were approved by Warden Lashbrook on May 17, 2016. (Doc. 1, pp. 10, 34).

Plaintiff claims that he is not guilty of the charges. He also claims that the Adjustment Committee (Lieutenant Heck and C/O Meyers) violated his due process rights because "they

failed to investigate or substantiate any part of [his] written statement as well as any part of the alleged offenses cited against [him] by C. Goodwin." (Doc. 1, p. 10).

**Inmate Altercation on May 18, 2016**

Plaintiff claims that when C/O Goodwin reviewed his letter on May 7, 2016, she "stated loudly in the presence of other inmates and officials that [he] wrote her a note desiring a confidential relationship." (Doc. 1, p. 10). According to Plaintiff, this announcement caused other inmates to believe that he was a snitch. (Doc. 1, p. 11). As a result, "multiple street organizations, B.O.s, G.O.s, and Black Stones then began threatening to hurt, harm, or kill [Plaintiff]." *Id*. Plaintiff told "Internal Affairs, Mental Health Staff, the Administration, and Segregation Security Staff" about the threats, both in writing and in person. *Id.* The threats overwhelmed Plaintiff and he became suicidal, telling mental health staff (on May 16 and 17, 2016) that he would rather kill himself than be "tor[tured] and killed by those street gangs that were after [him]." *Id.* As a result, Plaintiff was placed on suicide watch. *Id.* The mental health staff told "Internal Affairs, Warden Lashbrook, and Supervisor Major Clelland"[1] about Plaintiff's "situation." *Id.*

On May 17, 2016, Plaintiff spoke with Internal Affairs and requested protective custody. *Id*. He was told, "you won't receive protective custody because Pinckneyville Correctional Center doesn't provide it and plus you are in segregation anyway so you will be okay." *Id.*

On May 18, 2016, "after requesting through Mental Health to be celled alone for security purposes," Plaintiff was released from suicide watch and returned to the segregation units. (Doc. 1, p. 11). Mental Health told Plaintiff that he would be single celled because he had been labeled a snitch. (Doc. 1, p. 12). Additionally, Plaintiff claims that, "at this point the segregation

---

[1] Major Clelland is not a defendant in this action.

security staff, Lieutenant Pearce, and Sergeant Chapman were well aware of [his] situation being that they controlled the segregation unit and [they were] a necessary prerequisite to me being allowed to tell Internal Affairs, Mental Health, and Prison Administration that [his] life was in danger." (Doc. 1, p. 12).

Nonetheless, Lieutenant Pearce, Sergeant Chapman, and C/O Shurtz assigned Plaintiff to a cell with Jones, an inmate associated with a group that was threatening Plaintiff. *Id*. Plaintiff also claims that, pursuant to applicable prison rules, Warden Lashbrook had to have known about the allegedly unsafe double-cell assignment. *Id*.

As soon as Jones saw Plaintiff, he began to "intimidate and threaten" him. *Id*. Plaintiff "pleaded" with C/O Shurtz to not put him in the cell with Jones, but C/O Shurtz said, "Shut the fuck up. This is where you're going." *Id*. Once Plaintiff was in the cell, he and Jones immediately began to fight. *Id*. Although Plaintiff was injured during the fight (a "busted lip and bloody mouth"), C/O Shurtz did not allow him to be seen by healthcare. Lieutenant Pearce, who witnessed "what Officer Shurtz did," lied and said Plaintiff did receive medical care for his injuries. (Doc. 1, p. 13).

**Second Disciplinary Proceeding**

In connection with the inmate altercation that occurred on May 18, 2016, C/O Shurtz wrote Plaintiff a disciplinary ticket for assault (ODR No. 201601296/1). *Id*. C/O Shurtz said he was writing the ticket for assault – as opposed to fighting - because Plaintiff gave them (C/O Shurtz, Lieutenant Pearce, and Sergeant Chapman) such a hard time about his cell placement. *Id*.

On May 24, 2016, a disciplinary hearing was held regarding ODR No. 201601296/1-PNK. (Doc. 1, p. 54). Plaintiff was charged with violating DR 102 (assaulting inmate Jones).

*Id*. Plaintiff pled not guilty, claiming he was only reacting to a threat. The Adjustment Committee, which was comprised of Lieutenant Heck and C/O Meyers, found Plaintiff guilty. *Id*. The Adjustment Committee sanctioned Plaintiff with placement in segregation for 3 months, demotion to "C" grade for 3 months, revocation of 1 month of GCC, and recommended a disciplinary transfer. *Id*. The Adjustment Committee's findings and sanctions were approved by Warden Lashbrook on May 31, 2016. *Id*. Administrative Review Board member D. Flatt subsequently affirmed the finding and sentence. (Doc. 1, p. 57). In addition, it appears that Plaintiff's GCC revocation was subsequently reduced to 15 days. (Doc. 1, p. 63).

Plaintiff complains that the Adjustment Committee "failed to investigate any part of [his] written statement" and claims that "they disregarded anything that pointed to [his] innocence." (Doc. 1, p. 13).

**Requests for Protective Custody after the Inmate Altercation**

After the altercation with inmate Jones, Plaintiff was single celled for the remainder of his time in segregation. (Doc. 1, p. 13). Although Plaintiff was celled alone, he continued to fear for his safety because threats continued. Accordingly, Plaintiff continued to request placement in protective custody. *Id*.[2] Plaintiff claims that Lieutenant Furlow and Warden Lashbrook denied his requests for protective custody.

**Allegations Pertaining to Length of Time in Segregation**

As noted above, Plaintiff received four months in segregation with regard to the first disciplinary infraction and three months in segregation with regard to the second disciplinary infraction. Accordingly, Plaintiff was in segregation for approximately seven months, from May 2016 through December 2016. Plaintiff claims that he should have been released from

---

[2] On May 22, 2016, Plaintiff submitted an emergency grievance directed to Warden Lashbrook. (Doc. 1, pp. 11, 42-43). Plaintiff filed a second grievance on June 5, 2016, claiming that his life was in danger. (Doc. 1, pp. 11, 45-46).

segregation in September 2016. This is because, as is set forth more fully below, Director Baldwin reduced Plaintiff's term of segregation in connection with the first disciplinary proceeding from four months to one month.

According to the Complaint and exhibits attached thereto, Director Baldwin eventually modified the Adjustment Committee's findings with respect to Plaintiff's first disciplinary proceeding. Specifically, Director Baldwin issued the following modifications: (1) not guilty of violating DR 208; (2) not guilty of violating DR 307; and (3) unsubstantiated as to violating DR 404. *Id*. All three charges were deleted from Plaintiff's record. *Id*. Director Baldwin affirmed the guilty finding as to the charge for violating DR 304. *Id*. Plaintiff's sanctions were reduced as follows: (1) segregation, one month; (2) "C" grade demotion, three months, and (3) commissary restrictions, three months. (Doc. 1, pp. 10, 36, 64). Additionally, the GCC revocation issued in connection with the first disciplinary proceeding was denied by the Prisoner Review Board and/or Director Baldwin. *Id*.

In July 2016, the Parole Board told Plaintiff that Director Baldwin had reduced his time in segregation in connection with the first infraction. (Doc. 1, p. 14). "From that day forward, [Plaintiff] started to inquire about why [his] segregation outdate hadn't changed when the Director, in fact, overturned the Adjustment Committee and Warden Lashbrook's decision." *Id*. Plaintiff claims that "Pinckneyville Correctional Center's Records Officer and relevant staff" became aware of Director Baldwin's decision to reduce Plaintiff's term in segregation on August 9, 2016. *Id*.

On July 28, 2016, Plaintiff asked his counselor, Jarrod E. Selby (not a defendant) whether his segregation exit date had been altered. (Doc. 1, p. 60). A counseling summary attached to the Complaint indicates that Counselor Selby checked electronic records and told Plaintiff his

segregation exit date was December 7, 2016. *Id.* Plaintiff submitted another inquiry on August 10, 2016, asking if the IDR written by C. Goodwin had been reduced and stating that he "was told by the PRB this would take place." (Doc. 1, p. 61). The responding counselor (name is illegible) stated "ticket has not been reduced yet." *Id.*

On August 18, 2016, Plaintiff wrote to Sherry Benton, a member of the Administrative Review Board, regarding the status of previously filed grievances. (Doc. 1, p. 14). Plaintiff claims this was "another attempt to shed light on the fact that [he] was suppose[d] to be out of segregation." *Id.* The inquiry stated, in relevant part, as follows:

> I'm writing to inquire about two grievances that I sent to you in the past few months. Can you give me a status report (or response) on the following grievances?
>
> > One was an appeal to a disciplinary report written by C. Goodwin on May 7, 2016 here in Pinckneyville C.C. for DR504 violations of (208, 304, 307, 404) (sent to you 7-10-16)[3]
> >
> > The second is a grievance concerning medical records (intake interview) that was falsified by the nursing staff here at Pinckneyville C.C. I was never interviewed nor did I sign that document. (sent to you 6-8-16).

(Doc. 1, p. 65). Benton told Plaintiff that his grievances were still pending, indicated that the staff members were overworked, assured him he would receive a response, and thanked him for his patience. (Doc. 1, pp. 65-66). Plaintiff claims that Benton is subject to liability for exhibiting deliberate indifference to the fact that he had been held in segregation for too long. (Doc. 1, p. 14).

---

[3] The Counselor's response indicates that the referenced grievance is grievance No. 06-40-16 and was received on July 13, 2016. (Doc. 1, p. 65). Grievance No. 06-40-16 is attached to the Complaint as Exhibit 5. (Doc. 1, pp. 30-32). That grievance was written on June 8, 2016 – before Plaintiff's time in segregation had been reduced by Director Baldwin. *Id.* The grievance objected to the disciplinary report and related findings, but does not claim that Plaintiff's sentence had already been reduced or that Plaintiff had been detained in segregation for too long. *Id.*

Plaintiff spoke to Counselor Selby again on August 30, 2016 regarding whether his segregation "out date" had changed. (Doc. 1, p. 62). Counselor Selby checked the computer and reported that electronic records still listed a segregation exit date of December 7, 2016. *Id*. Counselor Selby also told Plaintiff that if and when the sanctions were reduced, Plaintiff would receive written notification.

An exhibit attached to the Complaint indicates that, on February 27, 2017, Plaintiff received written notification regarding the Director's decision to reduce his time in segregation. (Doc. 1, p. 36). A second exhibit indicates that, on March 3, 2017, Plaintiff received a "Disciplinary Reduction Notification," stating that his time in segregation was reduced from 4 months to 3 months. (Doc. 1, p. 64).

**Conditions of Confinement in Segregation**

While Plaintiff was in segregation he did not go outside to recreation for safety reasons, he was limited to one shower per week (inmates in general population receive two showers per week), he could not speak with his family, he did not receive the $10.00 the state gives to inmates every month, and he was denied prison job opportunities/phone usage. (Doc. 1, pp. 14, 16). He became depressed, paranoid, and struggled with sleep. (Doc. 1, p. 15). Plaintiff also claims that he suffered mental anguish to the point of suicidal ideation. (Doc. 1, p. 16).

Plaintiff's segregation cell did not have any electrical outlets and he could not plug a fan in. (Doc. 1, pp. 15-16). Therefore, he endured extremely hot temperatures for five months. *Id*. He also developed boils from being dirty, hot, and sweaty. *Id*. Plaintiff complained to Lieutenant Pearce about his cell conditions. *Id*. Lieutenant Pearce threatened Plaintiff, saying he and Sergeant Chapman would assign Plaintiff to a cell with another inmate who would "beat his ass." *Id*. Plaintiff stopped complaining because of the threats from Lieutenant Pearce. *Id*.

<u>**Discussion**</u>

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**First Disciplinary Proceeding (ODR No. 201601209/1)** [4]

**Count 1:** Lieutenant Heck and C/O Meyers deprived Plaintiff of a liberty interest without due process, by sanctioning him with 4 months in disciplinary segregation without adequately investigating the subject charges, in violation of the Fourteenth Amendment.

**Count 2:** Sherry Benton, Administrative Review Board, exhibited deliberate indifference when she failed to promptly investigate Plaintiff's grievance, causing Plaintiff to remain in disciplinary segregation for approximately 3 months too long, in violation of the Eighth Amendment.

**Second Disciplinary Proceeding (ODR No. 201601296/1)**

**Count 3**: C/O Shurtz, Lieutenant Heck, and C/O Meyers violated Plaintiff's due process rights in connection with the second disciplinary proceeding, in violation of the Fourteenth Amendment.

**Remaining Claims**

**Count 4:** Eighth Amendment claim against C/O Goodwin for provoking other inmates to attack Plaintiff by labeling him a snitch.

**Count 5**: Eighth Amendment claim against Warden Lashbrook, Lieutenant Pearce, Sergeant Chapman, and C/O Shurtz for failing to protect Plaintiff from being assaulted by other inmates.

**Count 6**: Eighth Amendment deliberate indifference claim against C/O Shurtz and Lieutenant Pearce for denying Plaintiff medical attention after the altercation with Jones.

---

[4] According to the Complaint, the GCC revoked in this hearing were subsequently restored. (Doc. 1, pp. 10, 36, 64). Accordingly, Counts 1 and 2 do not appear to be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) or *Edwards v. Balisok*, 520 U.S. 641 (1997).

**Count 7**: Eighth Amendment claim against Lieutenant Furlow and Warden Lashbrook for denying Plaintiff's requests for protective custody after the altercation with Jones.

**Count 8**: Eighth Amendment claim against Lieutenant Pearce for disregarding Plaintiff's complaints about his cell conditions.

**Count 9**: First Amendment claim against Lieutenant Pearce for threatening to assign Plaintiff to a cell with a violent inmate if Plaintiff continued to complain about the conditions in his cell.

## Count 1

Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must assess whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship ... in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For inmates whose punishment includes disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").

Here, even assuming that Fourteenth Amendment protections were triggered by Plaintiff's four months in segregation, Count 1 is subject to dismissal. Plaintiff does not allege that procedural due process requirements were not met. Instead, Plaintiff complains that the Adjustment Committee failed to adequately investigate the charges and/or substantiate the claims in his written statement. But even in a criminal prosecution, there is no affirmative duty on police to investigate. *See generally Whitlock v. Brueggemann*, 682 F.3d 567, 588–89 (7th Cir. 2012) (citing, e.g., *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)). In the instant case, there is no indication that Plaintiff was denied any of the procedural due process requirements outlined in *Wolff* and the exhibits attached to the Complaint indicate that the Adjustment Committee's decision was supported by some evidence. Accordingly, Count 1 is subject to dismissal without prejudice.

## Count 2

Plaintiff claims he was confined in segregation for three months longer than he should have been and that the additional time in segregation violated his constitutional rights. The only defendant named in connection with this claim is Sherry Benton, a member of the Administrative Review Board. According to the Complaint, Sherry Benton was deliberately indifferent to the fact that Plaintiff was being held in segregation for longer than ordered by Director Baldwin.

The basis for this claim is that when Plaintiff inquired about the status of a pending grievance, Benton responded indicating that the grievance was still under review and would be addressed as soon as possible. Plaintiff contends that if Benton had investigated his complaints sooner, she would have discovered that Plaintiff was being wrongfully detained in segregation.

Generally, mishandling a grievance – standing alone – is not enough to violate the United States Constitution. *See, e.g., Owens v. Evans,* No. 16-1645, 2017 WL 6728884, at *3 (7th Cir. Dec. 13, 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."); *George v. Abdullah*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Nonetheless, an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).

Here, the claims pertaining to Benton suggest nothing more than a delay in handling a grievance. There is no indication that Benton is subject to liability under the standard articulated in *Perez* or related authority. The grievance that is the basis for Plaintiff's claim simply asks about the status of grievance No. 06-40-16. Grievance No. 06-40-16 objected to ODR No. 201601209/1 and the related disciplinary hearing. It does not bring any claim regarding Plaintiff being detained in segregation for longer than ordered by Director Baldwin. Moreover, the subject grievance appears to have been submitted in June 2016 (before Director Baldwin reduced Plaintiff's time in segregation). Thus, even assuming Plaintiff could bring a deliberate

indifference claim pertaining to being detained in segregation for longer than ordered by Director Baldwin, his Complaint states no claim as to Benton.  Accordingly, Count 2 shall be dismissed without prejudice.

### Count 3

Plaintiff attempts to bring a due process claim pertaining to ODR No. 201601296/1 and the associated sanctions.  The challenged disciplinary hearing resulted in the revocation of good conduct credit.  Thus, his claim is barred under the principles outlined in *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Heck v. Humphrey*, 512 U.S. 477 (1994).  Count 3 shall therefore be dismissed without prejudice.

### Count 4

The Eighth Amendment is violated when prison officials are deliberately indifferent to a substantial risk of serious harm, including violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 828, 831-33 (1994).  Allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment.  *Merritte v. Kessel*, 561 F. App'x. 546, 548 (7th Cir. 2014); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2009); *see also Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (Eighth Amendment claim stated where guard "intended to do harm to [a prisoner] by inciting inmates to beat him[;]" guard told other inmates that plaintiff was a snitch).

Plaintiff contends he was repeatedly threatened by other prisoners and was assaulted by inmate Jones because C/O Goodwin told other inmates he was a snitch. This is sufficient, at the screening stage, to warrant further review as to Count 4.

## Count 5

To bring a failure to protect claim, Plaintiff must allege that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Farmer*, 511 U.S. at 834; *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Additionally, he must allege that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Plaintiff has sufficiently stated a failure to protect claim against Lieutenant Pearce, Sergeant Chapman, and C/O Shurtz. The Complaint suggests that these individuals were aware that Plaintiff had been threatened in connection with C/O Goodwin labeling Plaintiff a snitch. The Complaint also suggests that Plaintiff told these individuals inmate Jones would attack him if they were celled together. However, Plaintiff has failed to state a claim as to Warden Lashbrook. The Complaint fails to allege that Lashbrook was aware of a specific threat to Plaintiff's safety; Plaintiff merely alleges that he was aware of Plaintiff's "situation." Further, allegations that Warden Lashbrook must have known of the threat to Plaintiff's safety because of his role as a supervisory official are insufficient.

Accordingly, Count 5 shall receive further review as to Sergeant Chapman, Lieutenant Pearce, and C/O Shurtz. However, Count 5 shall be dismissed without prejudice as to Warden Lashbrook for failure to state a claim upon which relief can be granted.

**Count 6**

To state a claim under the Eighth Amendment, a prisoner must show that he suffered from a sufficiently serious medical condition (i.e., an objective standard) and that state officials exhibited deliberate indifference to his medical needs (i.e., a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). Plaintiff claims that after the altercation with Jones, he was visibly injured (a "busted lip and bloody mouth"). Plaintiff also claims that C/O Shurtz and Lieutenant Pearce denied his requests for medical attention. This is sufficient, at this early stage of the litigation, to allow Count 6 to proceed as to C/O Shurtz and Lieutenant Pearce.

**Count 7**

After the altercation with Jones, Plaintiff was single celled. According to Plaintiff, despite being single celled, he continued to fear for his safety and requested protective custody. Plaintiff claims that Lieutenant Furlow and Warden Lashbrook denied his requests for protective custody.

As noted above, in order to bring a failure to protect claim, Plaintiff must show that prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). In addition, damages for "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence," *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir.2000), or fear of an unrealized attack, *see Babcock v. White*, 102 F.2d 267, 270 (7th Cir. 1996). Considering this authority, the vague allegations directed at Lieutenant Furlow and Warden Lashbrook fall short of stating a viable claim. Accordingly, Count 7 shall be dismissed without prejudice.

## Count 8

Plaintiff alleges that his segregation cell was extremely hot because it did not have electrical outlets and he could not use a fan. According to the Complaint, Plaintiff suffered with "extreme heat" for five months and "developed boils on different parts of his body from being dirty, hot, and sweaty." These conditions *might* violate Eighth Amendment standards. See The *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986) (Eighth Amendment guarantees those in custody "a right to be free from extreme hot and cold temperatures."). Both the severity of the heat and its duration must be taken into consideration when determining whether the heat was unconstitutionally excessive. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) ("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional."). Plaintiff also alleges that he complained to Lieutenant Pearce about these conditions, and Lieutenant Pearce responded by threatening Plaintiff. The Court finds that, given the early stage of the litigation, Plaintiff's allegations warrant further review. Accordingly, Count 8 shall proceed as to Lieutenant Pearce.

## Count 9

"Threatening penalties for future speech goes by the name 'prior restraint,' and a prior restraint is the quintessential first-amendment violation." *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir.2009). *See also Id*. (The First Amendment protects "speakers from threats of punishment that are designed to discourage future speech." *Id*.

In the instant case, Plaintiff alleges Pearce threatened to assign him to a cell with an inmate who would "beat his ass" if he continued to complain about the conditions in his cell. Plaintiff claims that, as a result, he did not file a grievance pertaining to his cell conditions. The

Court finds that Plaintiff has stated a plausible First Amendment claim for prior restraint that is sufficient at the screening stage. The Court notes, however, that in order to maintain this claim, Plaintiff will have to meet the additional requirements (causation and proof of damages) discussed in *Fairley*.[5]

## Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) has been granted. (Doc. 6). Accordingly, Plaintiff's Motion for Service of Process at Government Expense (Doc. 4) shall be denied as unnecessary.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for disposition.

## Disposition

**IT IS ORDERED** that **COUNTS 1, 2,** and **7** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. **COUNT 3** is **DISMISSED** without prejudice as *Heck* barred.

**IT IS FURTHER ORDERED** that **COUNT 4** shall receive further review as to **GOODWIN**.

**IT IS FURTHER ORDERED** that **COUNT 5** shall receive further review as to **PEARCE, CHAPMAN,** and **SHURTZ**. **COUNT 5** shall be **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted as to **LASHBROOK**.

---

[5] In *Wheeler v. Talbot*, 695 F. App'x 151 (7th Circuit 2017), the Appellate Court affirmed dismissal of a prisoner's prior restraint claim pertaining to prison officials' threats to punish him if he continued to file grievances. In affirming the dismissal, the Seventh Circuit explained that, unlike "the world outside of prison," prisoners' rights to speak are subject to restrictions to promote legitimate public interests." *Id.* at 153. The Court concluded the prisoner's claims were not actionable because the Complaint implied that the officials "were more concerned by the volume of [the prisoner's] grievances than by their contents." *Id.* The instant Complaint does not include similar allegations.

**IT IS FURTHER ORDERED** that **COUNT 6** shall receive further review as to **SHURTZ** and **PEARCE**.

**IT IS FURTHER ORDERED** that **COUNT 8** shall receive further review as to **PEARCE**.

**IT IS FURTHER ORDERED** that **COUNT 9** shall receive further review as to **PEARCE**.

**IT IS FURTHER ORDERED** that **LASHBROOK, MEYERS, HECK, FURLOW,** and **BENTON** are **DISMISSED** from the Complaint without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate these individuals as parties in CM/ECF.

The Clerk of the Court shall prepare for **GOODWIN, SHURTZ, PEARCE,** and **CHAPMAN** (as to **COUNTS 4, 5, 6, 8,** and **9):** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address

shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Williams** for further pre-trial proceedings.  Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: June 4, 2018**

<u>**s/Michael J. Reagan**</u>
**Chief Judge**
**United States District Court**